**ALAIMALO TUMUIALII for herself and the heirs of ALAIMALO FAIMAFILI, Plaintiffs**

**v.**

**DAVID and SOPO ETIMANI, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 39-95

November 18, 1996

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge.

Counsel: For Plaintiffs, Pro Se
For Defendants, Aumoeualogo Soli

Decision and Order:

This is round two of an intra-family dispute we had earlier considered, and thought resolved, exactly four years ago in *Utu v. Alaimalo*, 22 A.S.R.2d 92 (Land & Titles Div. 1992) (hereafter the "1992 case"). The parties in the present case are all members of the Utu family occupying portions of Utu family land in Auasi, known as "Oloie." Except for Utu Sinagege Morris ("Utu"), the senior matai of the Utu family who has since passed away, the Utu family members before the court today are the same individuals who were before the court in 1992.

The 1992 case centered on a 55-year lease of a 60' x 60' residential site (hereafter the "lease") proposed by Utu for the defendants, David and Sopo Etimani (hereafter the "Etimanis"). Plaintiff Alaimalo Tumuialii (hereafter "Alaimalo"), a lesser matai of the Utu family, had there objected to the lease claiming that the leased area encroached on her family's land.[1] The 1992 court ruled in favor of the senior matai and the

---

[1] Plaintiffs' side of the family, specifically the descendants of Alaimalo Faimafili, earlier attempted unsuccessfully in 1989 to claim Oloie for themselves to the exclusion of the rest of the Utu family. *See Sivia v. Alaimalo*, 13 A.S.R.2d 95 (Land & Titles Div. 1989), *appeal dismissed* 17 A.S.R.2d 25 (App. Div. 1990). The 1992 case with the Etimanis was

Etimanis, finding that the proposed residential site, which was pointed out to the court during its visit to the disputed area, was the communal land of the Utu family, and that said site had previously been assigned to the Etimanis' side of the family.

Three years after the commencement of the 1992 case, the Etimanis started to build the residential structure on the land that Utu had offered to them for lease. After the Etimanis began to level and excavate the site for the laying of their foundation, Alaimalo again objected and eventually filed this action seeking injunctive relief. Alaimalo contends that the Etimanis' construction encroaches beyond the leased area onto her family's side of Oloie, and that the Etimanis have cut down coconut trees planted by her ancestors.

We granted a preliminary injunction, after noticing that the Etimanis' site plan received into evidence varied in description with that of the 60' x 60' area described in the lease that was the subject matter of the 1992 case.

At trial, Alaimalo called Lawrence French, a licensed surveyor, who affirmed the court's earlier impression that the Etimanis' construction site was not the same area of land described in the lease. Furthermore, Mr. French testified that he had physically mapped out the area described in the lease and discovered that the leasehold description actually referred to an area which lay more toward the rear of Oloie, where building would be impractical due to a steep incline.

Alaimalo urges the court to strictly enforce the court's decision in the 1992 case, that is, to confine the Etimanis' entitlement to the leasehold site as measured and outlined by Mr. French. Moreover, Alaimalo argues, without evidentiary foundation, that since the leasehold site encompasses part of the steep incline at the rear of Oloie, any site excavation by the Etimanis to accommodate a residence would seriously undermine the physical integrity of the area and render the area prone to erosion and potential land slides. As an afterthought, then, Alaimalo asks the court to permanently enjoin the Etimanis from excavating or leveling the actual leasehold site.

The Etimanis did not attempt to controvert Mr. French's findings, admitting that their original surveyor had misdescribed the area which Utu had pointed out for their new home. They claim, however, that their foundation was actually within that physical 60' x 60' area which the senior matai Utu had shown them for their home site.

---

another attempt by plaintiffs' side to reassert that claim to exclusive ownership. *Utu v. Alaimalo*, 22 A.S.R.2d at 92 (Land & Titles Div. 1989).

The ultimate purpose of plaintiffs' submission is unmistakable--to exclude the Etimanis altogether from Oloie. In other words, plaintiffs hope to achieve through a surveyor's error, a mistake beyond the control of the plaintiffs and the court, that which plaintiffs could not and did not achieve on the merits in previous litigation. Alaimalo's argument is specious.

■     This court does not rely exclusively on lease descriptions to determine the physical areas involved in a land dispute. Judges personally conduct site visits to ascertain the area of land in dispute. We are convinced that the description contained in the lease did not reflect the physical land area which Utu had designated for the Etimanis' use and to which Alaimalo had lodged a claim. We, the panel of judges that viewed the property in 1992, are of the opinion that the 1992 case did not adjudicate a dispute over a piece of land as described in the lease; rather, we are of the opinion that the 1992 case adjudicated a dispute involving a 60' x 60' plot of land (a) that was within an area of Oloie previously assigned for the use of the Etimanis' side of the family, see Utu v. Alaimalo, 22 A.S.R.2d at 93; (b) that was situated between then existing Etimani family structures and then existing Alaimalo family structures; (c) that did not incorporate any part of the slope at the rear of Oloie; and (d) that abutted, but did not incorporate, the rather defined curtilage area incorporating graves, flower gardens, and a lawn area maintained by the Alaimalo side. The 1992 case found that the Etimanis were entitled to a piece of land with these characteristics, and affirmatively repudiated Alaimalo's interest in a piece of land with these characteristics.

We are unable to glean from the evidence presented at trial the exact metes and bounds of the Etimani land entitlement, because neither the lease nor the record before us correctly reflects the Etimanis' 60' x 60' residential site.[2] However, Alaimalo has no cognizable legal interest in the precise location of the Etimanis' residential construction, except the

---

[2]  The Etimanis never bothered to present at trial testimony from their initial surveyor(s) to explain the reason for the error, and to clarify the area that was supposed to have surveyed and reduced to metes and bounds for the Etimanis at the very outset. Rather, the Etimanis were merely content to resubmit another site plan that changed the site description and contained the unenlightening notation: "Incorrection Coordinations 1st Plot Plan." The Etimanis did not elucidate how the data for the new site plan was obtained, nor whether the surveyor who prepared the second site description was the same "professional" who had created the 1992 site description. Accordingly, we are without the benefit of an explanation as to the nature of the surveyor's error.

interest in the curtilage. Therefore, we enjoin permanently the Etimanis' construction on or use of the curtilage area and order the removal of any property thereon. But we will leave designation of the exact location of the Etimanis' 60' x 60' site, within the area outlined above, to the matai of the Utu family,[3] who has the authority or *pule* over "the division, allocation, and reallocation of land to individual family members for their use." *Lutu v. Taesaliali'i*, 11 A.S.R.2d 80, 87 (Land & Titles Div. 1989).

It is so ordered.

---

[3] We take judicial notice of the concluded proceedings in *In Re the Matai Title "Utu" of Amouli*, MT No. 03-96, (Land & Titles Div. 1996) and note that a successor to the matai title Utu has been chosen.